UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PFIZER INC.,                                      :

             Plaintiff,              :

    -against-                              :

ARYE SACHS and JETANGEL.COM,    :

          Defendants.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

```
┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #: _____               │
│ DATE FILED: 9/8/09           │
└─────────────────────────────┘
```

08 Civ. 8065 (WHP)

MEMORANDUM AND ORDER

        Plaintiff Pfizer Inc. ("Pfizer") brings this trademark infringement and dilution action against Defendants Arye Sachs ("Sachs") and Jetangel.com for violations of the Lanham Act, common law trademark infringement, and violations of New York General Business Law. Plaintiff moves for summary judgment and also seeks attorney's fees pursuant to 15 U.S.C. § 1117. For the following reasons, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

        Pfizer is a global pharmaceutical company, which manufactures and sells Viagra, a prescription pharmaceutical used to treat erectile dysfunction. (Plaintiff's Local Rule 56.1 Statement of Undisputed Facts ("Pl. 56.1") ¶¶ 1-2.) Pfizer uses two marks in connection with Viagra: (1) the Viagra mark, which is registered as U.S. Registration No. 2,162,548; and (2) the "Viva Viagra" mark, which is the subject of a pending federal trademark application and is currently identified as Serial No. 77/043,506 (collectively "the Viagra Marks" or "the Marks"). (Pl. 56.1 ¶¶ 4, 19.) The Viagra mark consists of the word "Viagra" depicted in blue, block type. (Pl. 56.1 ¶ 18.) In the Viva Viagra mark, the word "Viagra" is preceded by the word "Viva"

written at an angle in cursive type. (Pl. 56.1 ¶ 18.) The Viva Viagra mark has appeared in virtually every advertisement for Viagra since mid-2007. (Pl. 56.1 ¶ 14.)

Pfizer spends millions of dollars advertising Viagra and promoting the drug through sponsorships of Major League Baseball and NASCAR. (Pl. 56.1 ¶¶ 6, 9-11.) To achieve commercial awareness, the Viagra Marks have been exhibited in the mass media, the electronic media, racecars, billboards, and other out-of-home advertising. (Pl. 56.1 ¶¶ 9-11.) Viagra has also attracted considerable international media attention. (Pl. 56.1 ¶ 6.) To date, approximately 35 million men have used Viagra, generating more than $16 billion in worldwide sales. (Pl. 56.1 ¶¶ 20-21.)

Since Viagra's launch in 1998, Pfizer has sent hundreds of cease-and-desist letters and commenced at least 29 lawsuits to prevent unauthorized use of the Viagra Marks. (Pl. 56.1 ¶¶ 26-27.) Pfizer also commenced other proceedings to protect the Viagra Marks from dilution or infringement resulting from unauthorized use by other marks, Internet domain names, or counterfeiters. (Pl. 56.1 ¶¶ 29-31.)

Sachs operates an unincorporated business that maintains the JetAngel.com website. (Pl. 56.1 ¶ 33.) JetAngel.com sells outdoor advertising on decommissioned military equipment such as fighter jets and missiles akin to mobile billboards. (Pl. 56.1 ¶ 32.) Its website describes the benefits of advertising on platforms such as a ballistic missile to "creat[e] the right buzz for your company." Pfizer Inc. v. Sachs, No. 08 Civ. 8065 (WHP), 2008 WL 4525418, at *1 (S.D.N.Y. Oct. 8, 2008); (Pl. 56.1 ¶¶ 33-35, 37.) Sachs identifies himself as JetAngel's "Chief Fun Officer." Pfizer, 2008 WL 4525418, at *1.

On September 8, 2008, Sachs towed a trailer carrying a twenty foot decommissioned United States Air Force missile bearing the Viagra brand into Manhattan and

parked it in front of Pfizer's world headquarters. (Pl. 56.1 ¶¶ 39, 41.) Not surprisingly, a large piece of military hardware on Forty-Second Street in midtown stirred considerable interest among passersby. Sachs seized that opportunity to distribute informational pamphlets about his business and even left one with Pfizer. (Pl. 56.1 ¶¶ 42-43.) On September 9, 2008, Pfizer received an email from a company identifying itself as AVI Media Group. The email boasted that Defendants would return the following week but that this time the Viagra-branded missile would feature two female models "riding" it and distributing condoms. (Pl. 56.1 ¶ 44; Defendants' Local Rule 56.1 Statement of Undisputed Facts ("Df. 56.1") ¶ 44.) If Defendants intended this to be funny, Pfizer did not get the joke. That same day Pfizer sent Defendants a letter demanding they cease their unauthorized use of the Viagra Marks by September 10, 2008. (Pl. 56.1 ¶ 46.)

When Pfizer did not receive a prompt response, it sent a second cease-and-desist letter the following day. (Pl. 56.1 ¶ 47.) Over the ensuing weekend, Defendants exhibited the Viagra-branded missile at an adult entertainment exposition in New Jersey with a banner promoting its advertising services. (Pl. 56.1 ¶ 49.) On September 14, 2008, Defendants taunted Pfizer with an email announcing their intention to take the Viagra-branded missile on a tour of New York and twelve other major cities. As part of that promotion, Defendants stated that they would distribute condoms bearing images of the candidates for President of the United States. (Pl. 56.1 ¶ 51.) Defendants' email closed with a profane remark directed at Pfizer. (Pl. 56.1 ¶ 52.) On September 17, 2008, Defendants issued a press release describing the twelve city tour, the Viagra-branded missile and advertising opportunities through AVI Media Group. (Pl. 56.1 ¶ 54.)

3

The following day, Pfizer filed suit and this Court granted a temporary restraining order prohibiting Defendants from using or displaying the Viagra Marks in connection with any goods or services.  By Memorandum and Order dated October 8, 2008, this Court preliminarily enjoined Defendants from further use of the Viagra Marks, pending resolution of this action. Pfizer, 2008 WL 4525418, at *5.

DISCUSSION

I.  Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor."  Liberty Lobby, 477 U.S. at 255.  However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Liberty Lobby, 477 U.S. at 248 (quoting Fed. R. Civ. P. 56(e)).

Because Defendants appear in this action pro se, this Court "construe[s their] pleadings and motions liberally."  See In re Sims, 534 F.3d 117, 133 (2d Cir. 2008).

4

II. Trademark Infringement & False Designation of Origin

               Pfizer asserts trademark infringement under Section 32 of the Lanham Act, 15

U.S.C. § 1114, and false designation of origin, false endorsement and unfair competition under

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Both claims are governed by the same

standard: "plaintiff must demonstrate that it has a valid mark entitled to protection and that the

defendant's use of it is likely to cause confusion." Time Inc. v. Petersen Pub. Co., 173 F.3d 113,

117 (2d Cir. 1999); Mr. Water Heater Enterprises, Inc. v. 1-800-Hot Water Heater, LLC, --- F.

Supp. 2d ---, No. 08 Civ. 10959 (WHP), 2009 WL 2762163, at *3 (S.D.N.Y. Aug. 31, 2009).

    A. Protection of the Mark

               A "mark is distinctive and capable of being protected if it either (1) is inherently

distinctive or (2) has acquired distinctiveness through secondary meaning." Two Pesos, Inc. v.

Taco Cabana, Inc., 505 U.S. 763, 769 (1992) (emphasis omitted). "[R]egistered trademarks are

presumed to be distinctive and should be afforded the utmost protection." Lois Sportswear,

U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir. 1986). Similarly, "an unregistered

mark is entitled to protection under the Lanham Act if it would qualify for registration as a

trademark." Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 381 (2d Cir. 2005).

               There are four categories of trademarks: (1) generic; (2) descriptive; (3)

suggestive; and (4) arbitrary or fanciful. Lois Sportswear, 799 F.2d at 871. Neither party

suggests that the Viagra Marks are descriptive or suggestive. A mark that "refers to the genus of

which the particular product is a species" is considered generic and is not registrable. Park 'N

Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985); see also Paddington Corp. v.

Attiki Imps. & Distribs., Inc., 996 F.2d 577, 583 (2d Cir. 1993) ("Generic marks are never

protectable."). Marks that are categorized as arbitrary or fanciful, "because their intrinsic nature

serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." Two Pesos, 505 U.S. at 768.

Pfizer owns a valid and incontestable trademark registration for its Viagra mark. Additionally, the Viagra mark is fanciful, because the word "Viagra" was coined specifically for purposes of this trademark and has no meaning outside this context. See Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 11 n.12 (2d Cir. 1976) (mark is considered fanciful where it uses a word invented solely for its use as a trademark). Accordingly, the Viagra mark is protectable under the Lanham Act. The Viva Viagra mark is arbitrary, because it uses the common Spanish word "viva" in an unfamiliar way to refer to Viagra. See Abercrombie, 537 F.2d at 11 n.12 (mark is considered arbitrary where it applies a common word in an unfamiliar way). Accordingly, the Viva Viagra mark is also protectable under the Lanham Act.

Defendants argue that the Viagra Marks are not entitled to protection because they have become so famous that they are now generic. "The primary significance of the registered mark to the relevant public . . . shall be the test for determining whether the registered mark has become the generic name of goods or services." 15 U.S.C. § 1064(3); see also Courtenay Commc'ns Corp. v. Hall, 334 F.3d 210, 214 n.2 (2d Cir. 2003) ("Essentially, a mark is generic if, in the mind of the purchasing public it does not distinguish products on the basis of source but rather refers to the type of product."); Stix Prods., Inc. v. United Merchs. & Mfrs., Inc., 295 F. Supp. 479, 490 (S.D.N.Y. 1968) ("The standard to be applied in determining whether a term is generic is not whether it has some significance to the public as an indication of the nature or class of the article, but whether that is its principle significance."). "[T]he defendant bears the burden to rebut the presumption of [the] mark's protectability by a preponderance of the evidence." Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir.

6

1999). Overcoming this presumption of validity requires evidence such as properly conducted consumer surveys and proof of generic use of the mark by competitors, the mark's owner, or third parties. See, e.g., Frito-Lay, Inc. v. Bachman Co., 704 F. Supp. 432, 440 (S.D.N.Y. 1989); Gear, Inc. v. L.A. Gear Cal., Inc., 670 F. Supp. 508, 515 (S.D.N.Y. 1987).

    Defendants proffer an ad hoc "survey" of approximately 100 people who were asked "what brand name they will use to describe an erectile dysfunction drug." Defendants did not consult experts in survey science and recruited their surveyors through an ad on Craigslist. Defendants' survey was flawed methodologically and does not rebut the presumption of validity accorded to the Viagra Marks. See Am. Footwear Corp. v. Gen. Footwear Co., 609 F.2d 655, 660 n.4 (2d Cir. 1979) (finding district court properly rejected survey evidence in light of methodological defects); M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1087 (9th Cir. 2005) ("district judges properly rejected the . . . survey because the survey's creator did not qualify as an expert") (quotation marks omitted); Frito-Lay, 704 F. Supp. at 440 (finding presumption of validity accorded to registered mark was not overcome by survey results where the sample polled was not sufficiently representative). Defendants offer nothing else for their claim that the Viagra Marks are generic. Moreover, Pfizer's active policing efforts also refute Defendants' claim that the Viagra Marks are generic. See Frito-Lay, 704 F. Supp. at 440 ("[D]ue to Frito-Lay's vigorous policing efforts . . . [Defendant] can offer no evidence of widespread industry use."). Because Defendants have not satisfied their burden of proof, the Viagra Marks are protectable under the Lanham Act.

  B. Likelihood of Confusion

    In assessing the likelihood of confusion, this Court considers the following factors: (1) strength of the senior user's mark; (2) degree of similarity between the marks; (3)

competitive proximity of the product and likelihood that the senior user will bridge the gap; (4) evidence of actual confusion; (5) defendant's bad faith; (6) the quality of defendant's product; and (7) sophistication of the relevant group. Polaroid Corp. v. Polarad Elec. Corp., 287 F.2d 492, 495 (2d Cir. 1961). These factors do not create a "rigid formula" and no one factor is determinative. Lois Sportswear, 799 F.2d at 872.

### 1. Strength of the Mark

"The strength of a particular mark . . . is measured by its distinctiveness or the degree to which it indicates the source or origin of the product." Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1044 (2d Cir. 1992). This strength can be shown by a mark's inherent distinctiveness. See Paddington, 996 F.2d at 585. Factors such as commercial success of the product, advertising expenditures of the mark's owner, and media coverage of the mark can reinforce its strength. See Charles of the Ritz Group Ltd. v. Quality King Distribs., Inc., 832 F.2d 1317, 1321 (2d Cir. 1987) (considering commercial success and advertising expenditures); Pfizer, Inc. v. Y2K Shipping & Trading, Inc., No. 00 Civ. 5304 (SJ), 2004 WL 896952, at *3 (E.D.N.Y. March 26, 2004) (considering national and international media coverage).

The strength of the Viagra Marks is evidenced by their inherent distinctiveness. See Paddington, 996 F.2d at 583 ("[A]rbitrary and fanciful marks are considered to be inherently distinctive."). In addition, Viagra has achieved immense commercial success with worldwide sales of $16 billion. Pfizer also spends millions of dollars promoting Viagra using the Viagra Marks. Finally, both Viagra and the Marks have been extensively covered by television, radio, newspapers, and magazines. Accordingly, this factor weighs in favor of finding a likelihood of confusion.

8

## 2. Similarity of the Marks

"To apply [the degree of similarity factor], courts must analyze the marks' overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers." Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005). One of the factors to be considered is the typeface of the mark. See, e.g., Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1078 (2d Cir. 1993).

Defendants displayed a mark that is virtually indistinguishable from the Viva Viagra mark, consisting of the same typeface and coloring. Defendants displayed the mark in front of Pfizer's headquarters, a context which undoubtedly could lead to consumer confusion. Moreover, because Pfizer's advertising campaigns of the Viagra Marks have included variations of mobile advertisements such as Viagra-branded racecars and Viagra-sponsored Mobile Health Units, Defendants' mobile display of the Marks could be mistaken for one of these Pfizer-endorsed mobile advertisements. Accordingly, this factor weighs in favor of finding a likelihood of confusion.

## 3. Competitive Proximity and Likelihood of Bridging the Gap

The "concern with product proximity relates to the likelihood that customers may be confused as to the source of the products, rather than as to the products themselves." Arrow Fastener Co., Inc. v. Stanley Works, 59 F.3d 384, 396 (2d Cir. 1995). Selling different services or targeting a different market does not disprove a likelihood of confusion, because "the concern is not direct diversion of purchasers but indirect harm through loss of goodwill or tarnishment of reputation." McGregor-Doniger Inc. v. Drizzle Inc., 599 F.2d 1126, 1134-35 (2d Cir. 1979); see also Lois Sportswear, 799 F.2d at 874 ("The fact that appellants' [products] arguably are in a

9

different market segment makes . . . confusion [as to the source] more likely."). A court may find a likelihood of confusion where "consumers are likely to believe that the challenged use of a trademark is somehow sponsored, endorsed, or authorized by its owner." N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel LLC, 293 F.3d 550, 555 (2d Cir. 2002).

Although Defendants sell advertising services, Pfizer's international marketing campaigns have made the Viagra Marks widely recognizable. Therefore, consumers are likely to be confused as to whether Defendants are engaged in marketing services for Plaintiff. See MGM-Pathe Commc'ns Co. v. Pink Panther Patrol, 774 F. Supp. 869, 875 (S.D.N.Y. 1991) ("Members of the public could easily draw the inference that the [plaintiff] has loaned its name to the defendants' cause."). Accordingly, this factor weighs in favor of finding a likelihood of confusion.

### 4. Actual Confusion

"It is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." Savin Corp. v. Savin Group, 391 F.3d 439, 459 (2d Cir. 2004) (quotation marks omitted). "[T]he absence of proof of actual confusion is not fatal to a finding of likelihood, particularly where, as here, the junior mark has been in the marketplace for a relatively short period of time." MGM-Pathe, 774 F. Supp. at 875 (citing Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc., 830 F.2d 1217, 1227 (2d Cir. 1987)).

Defendants' Viagra-branded missile was in the marketplace for just 10 days before it was enjoined by this Court. Although Pfizer has not submitted evidence showing actual confusion, the absence of such evidence is not fatal to finding a likelihood of confusion. Accordingly, this factor neither weighs in favor nor against a likelihood of confusion.

### 5. Bad Faith

"This factor looks to whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." Lang v. Ret. Living Pub'g Co., Inc., 949 F.2d 576, 583 (2d Cir. 1991) (quotation marks omitted). "Where a second-comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion." Paddington, 996 F.2d at 586. This presumption may be overcome by evidence that Defendants conducted a trademark search before using the mark, or that Defendants sought and relied on the advice of counsel. See Lang, 949 F.2d at 583.

Defendants do not claim ignorance of the Viagra Marks. Indeed, Defendants' visit to Pfizer's headquarters is powerful evidence that Defendants were aware the Marks belonged to Pfizer. Defendants also refused to comply with Pfizer's multiple cease-and-desist letters. Nor did Defendants seek or rely on the advice of counsel. Accordingly, this factor weighs in favor of finding a likelihood of confusion.

### 6. Quality of Defendants' Product

"This factor is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." Arrow Fasterer Co. v. Stanley Works, 59 F.3d 384, 398 (2d Cir. 1995). The concern is "not so much with the likelihood of confusion as with the likelihood of harm resulting from any such confusion." MGM-Pathe, 774 F. Supp. at 876; see also Virgin Enterprises Ltd. v. Nawab, 335 F.3d 141, 152 (2d Cir. 2003) ("the quality of the secondary user's product goes more to the harm that confusion can cause the plaintiff's mark and reputation than to the likelihood of confusion.").

Defendants' behavior, including advertising in front of adult entertainment establishments and threatening to distribute condoms with images of presidential candidates may be inconsistent with the image Pfizer wishes to project. See Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 205 (2d Cir. 1979) ("The trademark laws are designed not only to prevent consumer confusion but also to protect the synonymous right of a trademark owner to control his product's reputation." (quotation marks omitted)). Accordingly, this factor weighs in favor of finding a likelihood of confusion.

### 7. Sophistication of Relevant Group

"The more sophisticated the purchaser, the less likely he or she will be confused by the presence of similar marks in the marketplace." Savin, 391 F.3d at 461. The court should consider the "general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give." W.W.W. Pharm. Co., Inc. v. Gillette Co., 984 F.2d 567, 575 (2d Cir. 1993) (quotation marks omitted).

The marks Defendants displayed on their missile are indistinguishable from the Viagra Marks. Also, Sachs acknowledged that the missile is suggestive of "an erected [sic] penis" and that "Placing the name Viagra on a missile can and will be associated for what it is intended to be: [sic] an erection-boosting recreational drug." (Transcript of Preliminary Injunction Hearing dated Oct. 7, 2008 ("PI Hearing Tr.") at 15). Thus, even a sophisticated consumer, like Sachs, might conclude that Defendants' display was part of a Pfizer advertising campaign. See Centaur Commc'ns, 652 F. Supp. at 1113 ("even a highly sophisticated and discriminating class of consumers cannot be relied upon to allay confusion when the marks . . . are nearly identical"). Accordingly, this factor weighs in favor of finding a likelihood of confusion.

In summary, this Court concludes that Defendants' use of the Viagra Marks

creates a likelihood of confusion. See Y2K Shipping, 2004 WL 896952, at *7 ("Seven of the

eight criteria weigh strongly in Plaintiff's favor, and this overwhelmingly supports Plaintiff's

motion for summary judgment on its federal trademark infringement and unfair competition

claims."). Because the Viagra Marks are protectable and Defendants' use is likely to cause

confusion, Pfizer's motion for summary judgment on its Lanham Act trademark infringement

and false designation of origin claims is granted.


III. First Amendment Defense

In analyzing Defendants' First Amendment defense to a Lanham Act claim, the

central inquiry is whether a defendant's use is likely to cause confusion. See United We Stand

America, Inc. v. United We Stand, America New York, Inc., 128 F.3d 86, 92 (2d Cir. 1997)

(defendants were not entitled to First Amendment protection where they were using a slogan as a

mark to suggest plaintiffs were the source of defendants' identification). "The relevant issue is

not the content of the defendants' message, but rather defendants' use of plaintiffs' marks." SMJ

Group, Inc. v. 417 Lafayette Restaurant LLC, 439 F. Supp. 2d 281, 291 (S.D.N.Y. 2006); see

also MGM-Pathe, 774 F. Supp. at 877 (holding that defendants were subject to the trademark

laws despite being engaged in political speech).

Defendants used the Viagra Marks to bolster their advertising business.

Defendants' midday sojourn with a missile to Pfizer's world headquarters traded on the fame and

reputation of Viagra. At that time, Defendants advertised their own services while displaying the

Viagra-branded missile—using the Viagra Marks for their own commercial gain. "This is

precisely the use that is reserved by the Lanham Act to the owner of the mark." United We

13

Stand, 128 F.3d at 93. Defendants' argument that their use of the Marks was a protected

statement about erectile dysfunction is without merit. Even if that message could be teased from

Defendants' use, they have not shown that the Viagra Marks were necessary to make the point.

See Dallas Cowboys, 604 F.2d at 200 (defendant's First Amendment rights not encroached upon

where there are "numerous ways" in which defendant may relay his message without infringing

plaintiff's trademark). Accordingly, Defendants' use of the Viagra Marks is not protected by the

First Amendment.

## IV. Trademark Dilution

### A. Lanham Act Claim

"To prevail on a claim of trademark dilution, plaintiff must show that its mark is

'famous' and that defendants' subsequent use of the mark (or similar marks) in commerce is

likely to cause dilution . . . by tarnishment." Pan Am. World Airways, Inc. v. Flight 001, Inc.,

No. 06 Civ. 14442 (CSH), 2007 WL 2040588, at *18 (S.D.N.Y. July 13, 2007); see also

Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 477 F.3d 765, 766 (2d Cir. 2007) (discussing

October 6, 2006 amendment to 15 U.S.C. § 1125(c) changing standard from actual dilution to

likelihood of dilution). A mark is considered "famous" when it is "widely recognized by the

general consuming public of the United States as a designation of source of the goods or services

of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). "Dilution by tarnishment" is defined as an

"association arising from the similarity between a mark or trade name and a famous mark that

harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). "Dilution ordinarily

applies where the parties do not operate in competitive or closely related product lines."

Malletier v. Dooney & Bourke, Inc., 561 F. Supp. 2d 368, 379 (S.D.N.Y. 2008). "A trademark

may be tarnished when it is . . . portrayed in an unwholesome or unsavory context, with the result that the public will associate the . . . lack of prestige in the defendant's goods with the plaintiff's unrelated goods." Hormel Foods Corp. v. Jim Henson Productions, Inc., 73 F.3d 497, 507 (2d Cir. 1996). It is well settled that "a mark is tarnished when its likeness is placed in the context of sexual activity, obscenity, or illegal activity." Hormel Foods, 73 F.3d at 507 (collecting cases).

Defendants concede that the Viagra Marks are famous, and that Defendants' display of the Viagra Marks qualifies as "use in commerce" as that phrase is defined by statute. See 15 U.S.C. § 1127 ("[A] mark shall be deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services."). In addition, Defendants exhibited the Viagra-branded missile at an adult entertainment exhibition, and informed Pfizer that the missile would be displayed again, with two models "riding" the missile and distributing condoms. This type of activity would likely harm Pfizer's reputation and cause dilution of the Viagra Marks by tarnishment. See Deere & Co. v. MTD Products, Inc., 41 F.3d 39, 43 (2d Cir. 1994) ("[T]he trademark's reputation and commercial value might be diminished . . . because the defendant's use reduces the trademark's reputation and standing in the eyes of consumers as a wholesome identifier of the owner's products or services."). Accordingly, Plaintiff's motion for summary judgment with respect to its Lanham Act dilution by tarnishment claim is granted.

B. State Law Claim

Pfizer asserts trademark dilution in violation of New York General Business Law § 360-l. "To establish a dilution claim under New York law, Plaintiff must establish: (1) ownership of a distinctive mark, and (2) likelihood of dilution." Y2K Shipping, 2004 WL 896952, at *8 (citing Hormel Foods, 73 F.3d at 506). Plaintiff has sufficiently established both the distinctiveness of the Viagra Marks and the likelihood of dilution resulting from Defendants'

15

use. Accordingly, Plaintiff's motion for summary judgment with respect to its trademark dilution claim under New York General Business Law is granted.

## V. Common Law Claims

### A. Trademark Infringement

"To prevail on its common law claim of trademark infringement, [plaintiff] need only present evidence sufficient to establish a violation of section 32(1) of the Lanham Act." Philip Morris USA Inc. v. Felizardo, No. 03 Civ. 5891 (HB), 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004). Because Pfizer has established its Lanham Act trademark infringement claim, its motion for summary judgment on the common law trademark infringement claim is also granted.

### B. Unfair Competition

While unfair competition claims under common law are governed largely by the same standard as their Lanham Act counterparts, they require a showing of bad faith or intent. See Genesee Brewing Co., Inc. v. Stroh Brewing Co., 124 F.3d 137, 149 (2d Cir. 1997). This Court previously discussed Defendants' deliberate use of the Viagra Marks in its analysis of the Lanham Act claims. Philip Morris, 2004 WL 1375277, at *6 (citing Centaur Commc'ns, 830 F.2d at 1227 ("[A]wareness [that a mark is in use] can give rise to an inference of bad faith.")). Indeed, Defendants infringement was not accidental, but by design—from the moment it began on September 8, at Pfizer's front door. Accordingly, Plaintiff's motion for summary judgment with respect to its common law unfair competition claim is granted.

16

VI.  False Advertising & Deceptive Acts & Practices Under New York General Business Law

Pfizer asserts false advertising and deceptive acts and practices in violation of New York General Business Law Sections 349(a), 350 and 350-a.  To prevail on its claims under these sections, Plaintiff must show that Defendants' actions would materially mislead a reasonable consumer, and that Plaintiff was injured as a result of Defendants' acts.  See S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 636 (2d Cir. 1996); Galerie Furstenberg v. Coffaro, 697 F. Supp. 1282, 1291 (S.D.N.Y. 1988).  While Pfizer has shown that Defendants' actions were likely misleading, it has not demonstrated any actual injury.  See Philip Morris, 2004 WL 1375277, at *6 ("As [plaintiff] has not established . . . that it suffered actual consumer harm, even if it could establish actual injury, for example, to goodwill, it is not the type of plaintiff that this law protects."); Weight Watchers Int'l, Inc. v. Stouffer Corp., 744 F. Supp. 1259, 1285 (S.D.N.Y. 1990) ("Although [plaintiff] has shown that the advertisements were misleading, it has failed to show either that [defendant] profited from these ads, or that plaintiff was damaged.").  Accordingly, Plaintiff's motion for summary judgment is denied with respect to its state false advertising and deceptive acts and practices claims.


VII.  Attorney's Fees

"The court in exceptional cases may award reasonable attorney's fees to the prevailing party."  15 U.S.C. § 1117(a).  "Exceptional cases are those where acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful."  Weight Watchers, 744 F. Supp. at 1289 (quotation marks omitted).  "This Court may grant attorney's fees under the Lanham Act only on evidence of fraud or bad faith."  Warner Bros. Entmt. Inc. v. Ideal World Direct, No. 06 Civ. 4174 (WHP), 2007 WL 3376901, at *1 (citing Conopco, Inc. v. Campbell

17

Soup Co., 95 F.3d 187, 194 (2d Cir. 1996)). "In determining whether a defendant's infringing or diluting conduct was carried out in bad faith, courts can rely on the considerable jurisprudence that has been developed applying the 'good faith' prong of the Polaroid test." N.Y. State Soc. Of Certified Public Accountants v. Eric Louis Assocs., Inc., 79 F. Supp. 2d 331, 348 (S.D.N.Y. 1999).

In its analysis of the Polaroid factors, this Court determined that Defendants acted in bad faith. Defendants failed to comply with two cease-and-desist letters, did not seek the advice of counsel, and then threatened Pfizer with plans for continued infringement. See Eric Louis Assocs., 79 F. Supp. 2d 331, 350 (S.D.N.Y. 1999) (awarding fees where defendants failed to comply with cease-and-desist letters and continued infringing on mark without consulting counsel). Additionally, Defendants used the Viagra Marks in an attempt to capitalize on Pfizer's goodwill. See Aris Isotoner Inc. v. Dong Jin Trading Co., Inc., No. 87 Civ. 890 (RO), 1989 WL 236526, at *5 (S.D.N.Y. Sept. 22, 1989) (awarding fees where defendant "intended to reap the benefit" of plaintiff's mark).

While Sachs proclaims that people "have the understanding that we are talking about something that is fun" (PI Hearing Tr. at 13) it was also obvious to him that Pfizer was not amused by his Viagra-missile. At the inception of this action, this Court cautioned Sachs that he faced considerable financial jeopardy, including damages and attorney's fees, if Pfizer was successful. (Transcript of Temporary Restraining Order Hearing dated Sept. 18, 2008 at 11.) It is regrettable that Sachs did not heed that admonition. Accordingly, Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted with respect to its trademark infringement claim under 15 U.S.C. § 1114(1) (First Claim for Relief), false designation of origin claim under 15 U.S.C. § 1125(a) (Second Claim for Relief), federal trademark dilution claim under 15 U.S.C. § 1125(c) (Third Claim for Relief), trademark infringement and unfair competition claims under New York common law (Fourth Claim for Relief), and trademark dilution claim under New York General Business Law Section 360-I (Fifth Claim for Relief). Plaintiff's motion for summary judgment is denied with respect to its deceptive acts and practices claims under New York General Business Law Sections 349(a), 350 and 350-a (Sixth Claim for Relief). Plaintiff's application for an award of reasonable attorney's fees under 15 U.S.C. § 1117(a) is granted. The Court will hold a conference on September 23, 2009 at 11:00 a.m.

Dated: September 8, 2009
     New York, New York

SO ORDERED:


WILLIAM H. PAULEY III
U.S.D.J.

*Copies mailed to:*
Paul C. Llewellyn, Esq.
Kaye Scholer, LLP
425 Park Avenue
New York, NY 10022
*Counsel for Plaintiff*

Mr. Arye Sachs
1202 4th Street
West Babylon, NY 11704
*Pro Se Defendant*